## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Nila Lisa Alvarado Martinez, | |
| Plaintiff, | Civil No. 3:19-cv-01017-TOF |
| v. | |
| Andrew Saul, Commissioner of Social Security, | November 3, 2020 |
| Defendant. | |

### <u>RULING ON PENDING MOTIONS</u>

The Plaintiff, Nila Lisa Alvarado Martinez, appeals the final decision of the Defendant, Andrew Saul, Commissioner of Social Security ("the Commissioner"), on her application for Title XVI Supplemental Security Income benefits. This appeal is brought pursuant to 42 U.S.C. § 405(g). Currently pending are the Plaintiff's motion to reverse and remand for an award and calculation of benefits, or in the alternative, for an order reversing and remanding for a new hearing (ECF No. 16) and the Defendant's motion to affirm the decision of the Commissioner. (ECF No. 19.) For the reasons explained below, the Plaintiff's motion to reverse with an order for an award and calculation of benefits is **DENIED**, but her alternative motion to reverse and remand for a new hearing is **GRANTED**. The Defendant's motion to affirm is **DENIED**. The Commissioner's decision is **VACATED** and **REMANDED** for proceedings consistent with this decision.

The Plaintiff raises several arguments on appeal. The scope of this decision is limited, however, to her arguments that the Administrative Law Judge ("ALJ") failed to develop the record and follow the treating physician rule. (Pl. Mem. of Law, ECF No. 16-2, at 1-11.) The Commissioner argues, in substance, that the ALJ properly developed the record and accorded an

appropriate amount of weight to the treating physician's opinion. (Def. Mem. of Law, ECF No. 19-1, at 8-16.)  The Court agrees with the Plaintiff that, under the facts of this case, the ALJ failed to develop the record by not obtaining medical records and opinions from her treating providers, and that the ALJ failed to follow the treating physician rule when assigning weight to the treating psychiatrist's opinions.  The Court will therefore remand the case for rehearing, as discussed more fully in Sections III and IV below.

## I.     BACKGROUND

### A.     Facts and Procedural History

On January 26, 2017, the Plaintiff filed for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act, alleging a disability onset date of January 1, 2007.  (R. 73-74.)  She alleged that she was disabled due to bipolar depression. (R. 73.)  On March 7, 2017, the Social Security Administration ("SSA") found that she was "not disabled." (R. 72.)  Her claim was denied on reconsideration. (R. 79.)  She then requested a hearing before an ALJ (R. 105), which was scheduled to take place on February 2, 2018.  (R. 127, 135.)  On February 2, 2018, the Plaintiff's counsel appeared at the hearing, but the Plaintiff did not.  (R. 38.)  The Plaintiff's counsel informed the ALJ that the Plaintiff was not present at the hearing because she had been admitted to Yale Psychiatric Institute and had yet to be discharged. (R. 38.)  The Plaintiff's counsel made an oral argument on her behalf (R. 43), and the vocational expert ("VE") testified about jobs that a person with the Plaintiff's limitations could perform.  (R. 43-46.)  The ALJ agreed to reschedule the hearing once the Plaintiff provided documentation of her hospitalization.  (R. 46.)

On February 19, 2018, the Plaintiff provided a discharge summary from Yale New Haven Health, showing that she was admitted on January 31, 2018 and discharged on February 2, 2018. (R. 210-11.)  Another hearing was scheduled and held before ALJ Matthew Kuperstein on June 18, 2018.  (R. 48, 215, 222.)  The ALJ issued an unfavorable decision (R. 15-35), and the Appeals

2

Council denied her request for review.  (R. 1.)  On June 27, 2019, she sought review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g).  (Pl. Compl, ECF No. 1.)  She filed a motion to reverse and/or remand on December 6, 2019.  (ECF No. 16.)  The Commissioner filed his motion to affirm on February 20, 2020.  (ECF No. 19.)

Portions of the Plaintiff's medical history will be set forth below, as necessary to explain the Court's decision.

### B.      The ALJ's Decision

At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the application date of January 26, 2017.  (R. 23.)  At Step Two, the ALJ found that the Plaintiff suffered from the severe impairments of bipolar disorder and depression.  (R. 24.)  At Step Three, the ALJ found  that the Plaintiff's impairments or combination of impairments did not meet or equal a listed disability enumerated in 20 C.F.R. § 404, Subpart P., App. 1 (20 C.F.R. 416.920(d), 416.925, and 416.926).  (R. 25-26.)  Next, the ALJ determined that the Plaintiff retained the following residual functional capacity:

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple, routine work tasks where the work does not involve interaction with the general public and involves only occasional interaction with supervisors or co-workers; to work that does not involve teamwork with co-workers and does not require the claimant to have any collaborative efforts with co-workers during work activities; and to work where there are only basic changes in work atmosphere and the claimant would not need to communicate in English.

 (R. 26.)

At Step Four, the ALJ found that the Plaintiff had no past relevant work.  (R. 29.)  Finally, at Step Five, the ALJ relied on the testimony of a VE to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. 30.) Accordingly, the ALJ determined that Plaintiff was not disabled since the date the application was filed.  (R. 30.)

II.   **APPLICABLE LEGAL PRINCIPLES**

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).   To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).   At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.*  At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the specified impairments listed in the regulations.  *Id.*  At Step Four, the ALJ uses a "residual functional capacity" ("RFC") assessment to determine whether the claimant can perform any of her "past relevant work . . . ." *Id*.  At Step Five, the ALJ assesses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.*  The claimant bears the burden of proving her case at Steps One through Four. *Id.*  At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  The Court's role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error.  "A district court may set aside the Commissioner's determination that a claimant is

not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted). The decision is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . .") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The Commissioner's conclusions of law are not entitled to the same deference. The Court does not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

If a decision is reversed because it contains legal error or is not supported by substantial evidence, the Court may "either remand for a new hearing or remand for the limited purpose of calculating benefits." *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 263

5

(E.D.N.Y. 2015) (internal quotation marks omitted); *see also Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999) (remanding for rehearing but directing Commissioner "to calculate and dispense SSI benefits" if he could not bear his burden at Step Five).  Remand for calculation of benefits is not appropriate when the record requires further development.  "In deciding whether a remand is the proper remedy, we have stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005).  To award benefits, a district court must find that, irrespective of the legal error, the record contains "persuasive proof" of the claimant's disability and "a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  A record contains "persuasive proof" of disability when there is "no apparent basis to conclude" that additional evidence "might support the Commissioner's decision." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).

## III.   <u>DISCUSSION</u>

The Plaintiff argues that the ALJ erred by:  (1) failing to obtain documentation from her admissions to Yale New Haven Psychiatric Hospital or treatment records from her treating mental health clinicians (Pl. Mem. of Law, ECF No. 16-2, at 1-2);  (2) failing to obtain medical source statements from her primary care providers or from her treating mental health clinicians  (*id.* at 2, 4-9); (3) ascribing "great weight" to the opinions of the State agency consultants and "little weight" to the opinions of the Plaintiff's treating mental health clinicians (*id.* at 11-17);  (4) formulating an incorrect RFC (*id.* at 22-24); and (5) relying on the opinion of the VE, whose testimony was not supported by substantial evidence. (*Id.* at 17-24.)  For the following reasons, the Court finds that the ALJ failed to develop the record by not obtaining the missing medical records and treating source opinions, and that the ALJ violated the treating physician rule when he assigned "little

weight" to the opinions of the Plaintiff's treating psychiatrist. The Court also rejects the Commissioner's contention that the ALJ discharged his duty to develop the record when he "permit[ed] plaintiff's counsel the opportunity to submit additional evidence." (Def. Mem. of Law, ECF No. 19-1, at 14-15.) The Court therefore reverses and remands the Commissioner's decision without addressing the Plaintiff's other arguments.

### A.    The ALJ Failed to Close Gaps in the Plaintiff's Medical Records

The ALJ has an affirmative obligation to develop a complete and accurate medical record. "[T]he Commissioner of Social Security . . . shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." 42 U.S.C. § 423; *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (noting that a "hearing on disability benefits is a non-adversarial proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the administrative record"). This duty exists even when, as in this case, the claimant was represented by counsel. *Perez*, 77 F.3d at 47; *see also Burgess*, 537 F.3d at 128. The ALJ's duty to develop the record is not, however, unlimited. The record is only incomplete when it has obvious gaps or inconsistencies. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5. "The duty to develop the record is particularly important where an applicant alleges he is suffering from a mental illness, due to the difficulty in determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace." *Merriman v. Comm'r of Soc. Sec.,* No. 14 Civ. 3510 (PGG/HBP), 2015 WL 5472934, at *19 (S.D.N.Y. Sept. 17, 2015) (citations omitted).

The Plaintiff asserts that the administrative record has obvious gaps, since it did not contain records from her hospitalization at Yale Psychiatric Hospital ("YPH") in September 2017 (Pl.

Mem. of Law, ECF No. 16-2, at 1), treatment records from Dr. Juan Carlos Cleves-Bayon and Dr. Shelby Jacobs (*id.* at 1), or treatment records from Connecticut Mental Health Center ("CMHC") after June 5, 2017.  (*Id.* at 1-2.)  For the reasons set forth below, the Court finds that the absence of these records created "obvious gaps" in the administrative record, and the ALJ failed to fulfill his affirmative duty to close these gaps.  "[W]here there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order."  *Rosa*, 168 F.3d at 83 (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)).

### i.  YPH Records from September 2017

The Plaintiff was admitted to YPH on or around September 5, 2017.  This visit was noted by a provider at the Yale New Haven Hospital Emergency Department during her January 2018 hospitalization. (R. 447 ("[R]ecently manic and admitted to YPH . . . .").)  In addition, on May 31, 2018, Victoria Tofield, APRN from the Fair Haven Community Health Center ("Fair Haven") performed the Plaintiff's annual physical exam and discussed the YPH admission in the "social history narrative." (R. 481.)  According to APRN Tofield's narrative, the Plaintiff was admitted to YPH for "manic/mixed symptoms as well as severe insomnia."  (*Id.*)  She had "quick improvement" on lithium, Trilafon, and Propanolol.  (*Id.*).  The ALJ used this narrative, among other records, to contradict the Plaintiff's hearing testimony that her medications were ineffective. Citing to APRN Tofield's progress note, the ALJ wrote: "The claimant testified her medications were ineffective . . . . The claimant . . . had 'quick improvement' with a combination of lithium, trilafon, and propranolol . . ." (R. 27-28.)  In other words, the ALJ used a secondhand account of the Plaintiff's hospital visit to contradict her hearing testimony but made no attempt to obtain the original records.  This created an "obvious gap" in the administrative record.

The Commissioner argues that the absence of the September 2017 YPH record is not an obvious gap, since the "Plaintiff did not submit evidence related to a September 2017 hospitalization and did not alert the ALJ about it." (Def. Mem. of Law, ECF No. 19-1, at 14.)  The Court disagrees.  The ALJ was clearly "alerted" to the Plaintiff's hospitalization, since he used APRN Tofield's summary of it to support his conclusion that the Plaintiff's medications were not ineffective.  (R. 27-28.)  Having been alerted to the existence of the YPH record, the ALJ was obligated to develop it.  *See Blash v. Comm'r of Soc. Sec. Admin.,* 813 F. App'x 642, 645 (2d Cir. 2020) (summary order) (holding that the ALJ failed to develop the record when other record evidence "show[ed] that further records concerning [the plaintiff's] functional capacity likely existed" and the ALJ did not seek out those records).

The Commissioner also seems to imply that the ALJ mitigated the absence of the YPH record by relying on APRN Tofield's progress note, stating: "Nonetheless, a May 2018 primary care progress note indicated that plaintiff made a 'quick improvement' in her manic symptoms and insomnia during a September 5, 2017 admission . . . ." (Def. Mem. of Law, ECF No. 19-1, at 14.) However, APRN Tofield's progress note is not an adequate substitute for the YPH records.  It is brief and lacks basic information about the Plaintiff's hospitalization.  It does not state what the Plaintiff's symptoms were, what her diagnosis was, what treatments she received, or how long she was hospitalized.  (*See generally* R. 481.)  Because "an overnight hospital stay is likely to be a serious and critical medical event that could materially change the weight of the evidence on the disability determination," *Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018) (summary order), the ALJ's decision to rely on a summary of the Plaintiff's psychiatric hospitalization is clearly flawed.

### ii.   Records from Dr. Cleves-Bayon and Dr. Jacobs

The record does not contain any notes or opinion evidence from Dr. Cleves-Bayon or Dr. Jacobs, to the point that it is difficult to ascertain their roles in the Plaintiff's treatment. There is enough information, however, to conclude that Dr. Cleves-Bayon and Dr. Jacobs both treated the Plaintiff for mental health issues at CMHC, otherwise referred to in the record as the "Hispanic clinic" and "La Clinica Hispana."[1] A printout from Hancock Pharmacy shows that Dr. Cleves-Bayon and Dr. Jacobs prescribed the Plaintiff's psychiatric medications between October 6, 2017 and January 8, 2018. (R. 432-33.) A chart note from the Plaintiff's January 2018 hospitalization indicates that the Plaintiff was actively treating at CMHC with Dr. Cleves-Bayon as of January 31, 2018. (R. 443.) A chart note from the Plaintiff's February 2018 hospitalization indicates that Dr. Jacobs was the Plaintiff's outpatient psychiatrist at CMHC as of March 10, 2018. (R. 463.) In sum, one or both of these psychiatrists provided the Plaintiff with mental health treatment between October 2017 and March 2018. During this time period, the Plaintiff was hospitalized twice (R. 447, 456) and had multiple changes in her psychiatric medications.[2] Records from the Plaintiff's

---

[1]     As noted by the Plaintiff, "[i]t appears—but is not certain from the face of the record—that Dr. Cleves-Bayon and Dr. Jacobs were seen at CMHC." (Pl. Mem. of Law, ECF No. 16-2, at 1 n.1.) Because of this, the Court will treat the records from Dr. Cleves-Bayon and Dr. Jacobs as being separate from CMHC's records, though further development of the record on remand may show that they are one in the same.

[2]     The record shows that the Plaintiff was regularly taking lithium, Doxepin, and Ambien, but was constantly switching off other medications. On October 6, 2017, she was prescribed clonazepam (Klonopin). (R. 432.) On October 31, 2017, she was prescribed 2mg of Abilify; on November 7, 2017, 10mg of Abilify; and on November 14, 2017, 20mg of Abilify. (*Id.*) On December 22, 2017, she was prescribed Fluphenazine, an antipsychotic. (*Id.*) On January 31, 2018, she presented to the Yale Emergency Room with altered mental status. (R. 447.) The chart notes state: "Hispanic psychiatrist left 1 month ago and a new psychiatrist has done some medication changes per her report. She is at increased doses of klonopin, recently toxic on lithium (1.4), has had sedation and hypoactivity, ataxia. Sent from CMHC due to these symptoms and inability to manage in the outpatient . . . ." (*Id.*) On February 26, 2018, she presented to Yale New Haven with lithium toxicity. (R. 456). The hospital recommended that she avoid lithium due to her frequent hospitalizations for lithium toxicity. (R. 481.)

treating psychiatrists may provide insight into her hospitalizations, her medication changes, and any "improvements" in her condition during that time period.  "Had the ALJ pursued additional information from . . . these sources, it is at least possible that the record would have included sufficient information to sustain plaintiff's claim of disability."  *Rosa,* 168 F.3d at 80.  Despite this, there is no indication that the ALJ made any attempt to retrieve these records.

### iii.  CMHC Records

The Plaintiff has received weekly treatment from providers at CMHC since January 6, 2015.  (R. 368.)  The most recent record from CMHC is dated June 5, 2017  (R. 385), but other records show that the Plaintiff was actively treating at CMHC after this date.  During her January 2018 hospitalization, a provider wrote that the Plaintiff was "currently seen at CMHC, Hispanic clinic," and noted that she had been sent to the emergency room by her treating physician at CMHC.  (R. 441.)  During her February 2018 hospitalization, "[i]t was revealed that the patient's outpatient psychiatrist had abruptly discontinued Klonopin on February 23rd due to concerns for abuse/selling of this medication." (R. 463.)  Upon discharge she was told to follow up with her outpatient psychiatrist, Dr. Jacobs at CMHC.  (R. 465, 466.)  The discharge notes also indicated that she had an appointment with Jose Villafuerte, her Licensed Clinical Social Worker ("LCSW") at CMHC, scheduled for March 14, 2018.  (R. 466.)  At her June 2018 hearing before the ALJ, the Plaintiff testified that she was still visiting her therapist once a week and seeing her doctor once a month. (R. 63.)  On October 10, 2018, LCSW Villafuerte wrote a letter to the Appeals Council,[3] stating that the Plaintiff had been a patient of CMHC since January 6, 2015 and still attended treatment on a weekly basis.  (R. 9.)

---

[3]     "[T]he administrative record should contain all evidence submitted before [the] final decision, including the new evidence that was not before the ALJ."  *Perez,* 77 F.3d at 45.

Though there was evidence showing that the Plaintiff was actively treating at CMHC up to and including the date of her hearing, there is no record of any treatment at CMHC dated after June 5, 2017.  There is no indication that any effort was made to obtain these records, nor is there any persuasive explanation for the ALJ's failure to do so.  Had the ALJ requested these records, the records may well have provided insight into the Plaintiff's hospitalizations, medication changes, and general mental state.  The absence of this evidence constitutes an "obvious gap" in the record.  *See, e.g., Rosa,* 168 F.3d at 79-80 (*"*The ALJ had before her only [the treating physician's] sparse notes which reflected nine visits between himself and [the plaintiff], considerably fewer visits than the two likely had based upon [the plaintiff's] testimony suggesting monthly treatment over a period of years . . . . Confronted with this situation, the ALJ should have taken steps directing [the plaintiff] to ask [the treating physician] to supplement his findings with additional information.*"*); *Geckle v. Berryhill*, No. 3:17-CV-208 (JCH), 2018 WL 1472518, at *4 (D. Conn. Mar. 26, 2018) ("A relative paucity of treatment notes from a treating source may constitute a gap in the record in some circumstances.").  In sum, the ALJ's failure to make any attempt to obtain the missing records from CMHC is reversible error.

**B.      The ALJ Erred by Failing to Obtain Treating Source Opinions**

Where, as here, the claimant filed her claim before March 20, 2017, the Social Security regulations generally oblige the Commissioner to obtain opinion evidence from a claimant's treating providers.  "Indeed, the plain text of the regulation [in force before March 20, 2017] does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity."  *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (citing 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)).  Even so, failure to obtain opinion evidence from the claimant's

treating providers does not necessarily invalidate the ALJ's decision.  When the record "contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity," *id*. at 34, the failure to obtain medical source opinion evidence is not "*per se* error."  *Sanchez v. Colvin*, No. 13-CIV-6303 (PAE), 2015 WL 736102, at \*5 (S.D.N.Y. Feb. 20, 2015); *see also Sinclair v. Saul*, No. 3:18-CV-00656 (RMS), 2019 WL 3284793, at \*7 (D. Conn. Jul. 22, 2019) (same).  Stated differently, when the ALJ possesses an "extensive medical record," the lack of medical opinion evidence does not automatically create an obvious gap in the record that "necessitate[s] remand."  *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order).

A medical record that lacks a treating source opinion is considered "sufficient" when its contents are comprehensive enough to facilitate an informed assessment of the claimant's impairments and RFC.  "The critical point" is that the claimant's medical records must contain "the sorts of nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully consider the extent and nature" of her impairments and "their impact on her RFC." *Sanchez*, 2015 WL 736102 at \*8.  When the medical records discuss only the claimant's illnesses and how to treat them, without offering "insight into how her impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life," the ALJ's duty to request a medical source statement is ordinarily triggered.  *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) (summary order).

In this case, the Plaintiff argues that the ALJ erred by failing to obtain opinions from her treating providers.  The Commissioner does not dispute that the ALJ failed to obtain opinions from the Plaintiff's providers, but instead argues that the ALJ had "sufficient information upon which to render a decision."  (Def. Mem. of Law, ECF No. 19-1, at 16.)  The Commissioner notes that

the ALJ had "treatment notes from Dr. Ayora and Mr. Villafuerte, as well as notes from other practitioners" and the Plaintiff's "statements at the hearing and in questionnaires about her symptoms, alleged limitations, and daily activities." (*Id.*)  The Commissioner also argues that the ALJ properly relied on the opinions of the two non-examining State agency consultants. (*Id.*)  The Court agrees with the Plaintiff that, under the facts of this case, the ALJ should have sought the opinions of her treating providers.

The legal principles articulated in *Tankisi* and *Guillen* support the Plaintiff's argument that the ALJ was required to obtain opinion evidence from her treating providers. The ALJ's decision does not explain "how the evidence supports" his RFC determination, nor does it contain a "discussion of Plaintiff's ability to maintain sustained work activity." *Reynolds v. Comm'r of Soc. Sec.*, No. 12-CV-1167S (WMS), 2019 WL 2020999, at *6 (W.D.N.Y. May 9, 2019).  There is no evidence in the record that the ALJ attempted to obtain any medical opinions in connection with the RFC determination.  The "specific facts of this case" do not support the conclusion that the administrative record—including the medical records, non-examining opinions and activities of daily living—was "sufficiently comprehensive to permit an informed finding by the ALJ." *Sanchez*, 2015 WL 736102, at *6 (internal quotation marks omitted).

### i. Medical Records

The administrative record in this case is not "extensive" or "voluminous." *Tankisi*, 521 F. App'x at 34.  The administrative record totals 485 pages, and only 123 of those pages are medical records. (R. 362-485.)  "[T]he typical record [in a Social Security case] contains 700-1000 plus pages." *Jackson v. Berryhill*, No. 1:18-CV-04569 (ALC), 2019 WL 4593648, at *7 (S.D.N.Y. Sept. 23, 2019) (finding that the administrative record was "not comprehensive" because it only contained 481 pages); *see also Duffy v. Comm'r of Soc. Sec.*, No. 17-CV-3560 (GHW/RWL), 2018 WL 4376414, at *10 (S.D.N.Y. Aug. 24, 2018) ("At [445] pages, the record is relatively

14

scant . . . .").  What there is of the record reveals that there were several "obvious gaps" in the medical records that the ALJ had an obligation to fill.  *See supra* Section III.A.

Even more important than the page count is the fact that the Plaintiff's medical records do not sufficiently illuminate how her impairments "affect her ability to work, or her ability to undertake her activities of everyday life."  *Guillen*, 697 F. App'x at 109.  The record contains only two medical source opinions, both attributed to treating psychiatrist Dr. Paola Ayora at CMHC. (R. 368-376.)  The ALJ gave "little weight" to both opinions.[4]  (R. 28.)  The treatment notes from Dr. Ayora and LCSW Villafuerte at CMHC, dated between January 23, 2017 and June 5, 2017, principally relate to the treatment of the Plaintiff's bipolar disorder.  (*See generally* R. 362-67, 377-90.)  Putting aside the fact that there are no treatment records from CMHC after June 5, 2017, these treatment records are "raw medical data" and contain no assessment of the Plaintiff's functional limitations.  *See Belbusti v. Saul*, No. 3:19-CV-00291 (WIG), 2019 WL 6768788, at *4 (D. Conn. Dec. 12, 2019) (finding that therapy records that contained only "medication notes, diagnosis, and Plaintiff's reports on mood, anxiety and other physical reports" were "raw medical data and/or bare medical findings").  Similarly, the records from her treatment at Fair Haven and the chart notes from her hospitalizations at Yale contain only "raw medical data" and provide no insight into the Plaintiff's functional capabilities.  (*See generally* R. 391-431, 434-85.)

In sum, the medical records are sparse, contain gaps, and do not contain any assessment of the Plaintiff's ability to function in the workplace.  Accordingly, the Court concludes that in the absence of functional assessments by the Plaintiff's treating providers, her medical records are not

---

[4]      See *infra* Section III.C for the Court's analysis of the ALJ's decision to accord less than controlling weight to Dr. Ayora's opinion.

"sufficiently comprehensive to permit an informed finding by the ALJ." *Sanchez*, 2015 WL 736102, at *6 (internal quotation marks omitted).

### ii.   Non-Examining Agency Consultant Opinions

When the record "do[es] not shed any light" on a claimant's RFC, the opinion of a non-examining State agency consultant is ordinarily not a sufficient substitute for the opinion of the claimant's treating provider.  *Guillen*, 697 F. App'x. at 108-09 (remand required where "the medical records obtained by the ALJ [did] not shed any light on [the plaintiff's] residual functional capacity, and the consulting doctors did not personally evaluate [the plaintiff]"); *see also Card v. Berryhill*, No. 3:18-CV-1060 (AWT), 2019 WL 4438322, at *4 (D. Conn. Sept. 16, 2019) (same). Stated differently, opinions by non-examining consultants cannot fill the gap created by the absence of treating physician opinions when the medical records "do[] not provide a sufficient basis" to determine a claimant's RFC.  *Borelli v. Berryhill*, No. 3:18-CV-0801 (VLB), 2019 WL 4233586, at *13 (D. Conn. Sept. 6, 2019).  Courts have held that "[r]emand is . . . necessary" under these circumstances.  *Martinez v. Berryhill*, No. 3:17-CV-0843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019).

In this case, the ALJ assigned "less weight" to the opinion of Thomas Hill, MD, the State agency consultant at the initial level and "great weight" to the opinion of Christopher Leveille, Psy.D, the State agency consultant at the reconsideration level.  (R. 29, 78, 90.)  Yet the underlying medical records did not "shed any light" onto the Plaintiff's functional and work-related limitations.  *Guillen*, 697 F. App'x. at 108.  Therefore, these opinions do not constitute "sufficient evidence from which an ALJ can assess the [Plaintiff's] residual functional capacity." *Tankisi*, 521 F. App'x at 34; *see Dowling v. Saul*, No. 3:19-CV-01170 (WIG), 2020 WL 2079113, at *5 (D. Conn. Apr. 30, 2020) ("The ALJ's reliance on the assessment by the State Agency physicians is problematic because there is _no_ medical opinion from a treating physician and/or specialist

addressing the functional limitations that flow from Plaintiff's physical impairments to support the ALJ's physical RFC findings."); *Byrne v. Berryhill*, No. 3:19-CV-00066 (RAR), 2020 WL 373076, at *4 (D. Conn. Jan. 23, 2020) (same); *Card*, 2019 WL 4438322, at *4 (remanding where medical records did not shed light into RFC and ALJ "only refer[red] to the opinions of nonexamining state agency physicians"); *Alamo v. Berryhill*, No. 3:18-CV-00210 (JCH), 2019 WL 4164759, at *6–8 (D. Conn. Sept. 3, 2019) (finding that ALJ failed to develop the record by not obtaining treating physician opinion "notwithstanding" opinions by examining and non-examining consultants and further, that medical records and consulting opinions were insufficient to support "light work" determination).

In addition, Dr. Leveille's opinion, which was accorded "great weight," does not account for subsequent changes in the Plaintiff's condition.  "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) (citation and internal quotation marks omitted), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order).  "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Sanford v. Berryhill*, No. 3:18-CV-01019 (SALM), 2019 WL 427322, at *5 (D. Conn. Feb. 4, 2019) (quoting *Biro v. Comm'r of Soc. Sec.*, No. 6:17-CV-06098 (EAW), 2018 WL 4666068, at *4 (W.D.N.Y. Sept. 28, 2018)); *see also Camille,* 652 F. App'x at 28 n.4 (noting that a consultant's opinion may be found stale if the subsequently submitted evidence "differ[s] materially" from what the consultant originally had before him).  Dr. Leveille's opinion is dated June 22, 2017.  (R. 86, 88.)  Though the ALJ concluded that Dr. Leveille's assessment was "not inconsistent" with the evidence dated after June 22, 2017 (R. 29), the record shows otherwise.

The record shows that Dr. Leveille's assessment is contradicted by the subsequently received evidence.  For example, he wrote that the Plaintiff had "no psych IP's or description of severe psychotic sx or severe Mood sx in past or current MER to support Dx of Bipolar dis." (R. 86.)  In other words, because of a lack of psychiatric inpatient treatment or severe psychotic/mood symptoms, Dr. Leveille opined that the record did not support Dr. Ayora's diagnosis of bipolar disorder.   Subsequently, the Plaintiff was hospitalized three times: In September 2017 for "maniac/mixed symptoms" and "severe insomnia" (R. 441, 481); on January 31, 2018 for "possible manic episode" and lithium toxicity (R. 439); and on February 26, 2018 for lithium toxicity.  (R. 463.)  Because Dr. Leveille's opinion does not account for the deterioration in the Plaintiff's condition, it is stale and cannot be considered substantial evidence.

### iii.  Activities of Daily Living

In formulating an RFC, the ALJ is entitled to consider "descriptions and observations" made by a claimant about her own limitations.  20 C.F.R. § 416.945(a)(3).  Reports of these daily activities, however, must "offer insight on how plaintiff's impairments affect her ability to work and undertake activities of daily life."  *Keovilay v. Berryhill*, No. 3:19-CV-0735 (RAR), 2020 WL 3989567, at *4-5 (D. Conn. Jul. 15, 2020).  The Commissioner argues that the ALJ "relied upon plaintiff's activities of daily living when he formulated the RFC finding, as he is permitted to do." (Def. Mem. of Law, ECF No. 19-1, at 6.)  Contrary to the Commissioner's assertion, the ALJ's decision contains no discussion of the Plaintiff's daily activities.  (*See generally* R. 23-30.)  Though the Commissioner discusses the Plaintiff's daily activities at some length in his brief (Def. Mem. of Law, ECF No. 19-1, at 6), the ALJ did not even mention these facts, let alone explain why they supported his findings.  "[A] reviewing court 'may not accept appellate counsel's *post hoc* rationalizations for agency action . . . .'" *Pickett v. Colvin*, No. 3:13-CV-1295 JCH, 2015 WL 1321017, at *3 (D. Conn. Mar. 23, 2015) (quoting *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999)).

In sum, the Court cannot conclude that the Plaintiff's activities of daily living sufficiently informed the ALJ's conclusions, when the decision contains no indication that the ALJ even considered them.

### iv.   Conclusion

Accordingly, the Court concludes that the Plaintiff's medical records, activities of daily living and the opinions by the non-examining State agency consultants do not constitute "sufficient evidence from which" the ALJ could determine her RFC such that opinions from her treating providers were unnecessary. *Tankisi*, 521 F. App'x at 34.  Remand is therefore warranted. *See Dowling*, 2020 WL 2079113, at *7 ("Because there is <u>no</u> medical source opinion or functional assessment supporting the ALJ's finding that [the claimant] can perform light work with limitations, the Court concludes that the RFC determination is without substantial support in the record and a remand for further administrative proceedings is appropriate."); *Delgado v. Berryhill*, No. 3:17-CV-0054 (JCH), 2018 WL 1316198, at *7-10 (D. Conn. Mar. 14, 2018) (same).

The ALJ "should develop the record as necessary to obtain opinions as to the plaintiff's functional limitations from her treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a functional capacity evaluation, and thoroughly explain his findings in accordance with the regulations." *Dowling*, 2020 WL 2079113, at *7; *see also Martin v. Berryhill,* No. 16-CV-6184 (FPG), 2017 WL 1313837, at *4 (W.D.N.Y. Apr. 10, 2017) ("There were many avenues available to the ALJ to fill the gap . . . .").  The Commissioner on remand "should employ whichever of these methods are appropriate to fully develop the record as to [the plaintiff's] RFC." *Dowling*, 2020 WL 2079113, at *7.

### C.     The ALJ Violated the Treating Physician Rule

The "treating physician rule" applies to claims filed before March 27, 2017.  20 C.F.R. § 416.927.  When adjudicating claims filed before that date, "[t]he SSA recognizes a 'treating

physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Snell*, 177 F.3d at 133). "According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Burgess*, 537 F.3d at 128 (internal quotation marks omitted). If the opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques, then the opinion is not entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

"[I]f the ALJ decides the opinion is not entitled to controlling weight, [she] must determine how much weight, if any, to give it." *Connolly v. Berryhill*, No. 3:18-CV-00185 (MPS), 2020 WL 772851, at *2 (D. Conn. Feb. 18, 2020) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)). "In doing so, '[the ALJ] must explicitly consider the following, non-exclusive '*Burgess* factors': (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* (quoting *Estrella*, 925 F.3d at 95-96). "After considering these factors, the ALJ must 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Id.* (quoting *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). "A failure to explicitly consider these factors is a procedural error warranting remand unless a searching review of the record shows that the substance of the treating physician rule is not traversed." *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (internal quotation marks omitted). "To put it simply, a reviewing court should remand for failure to explicitly

consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided good reasons for its weight assessment." *Id.* (internal quotation marks omitted).

Dr. Ayora, who the ALJ acknowledged as a "treating specialist" (R. 28), provided two medical source opinions. The first was dated February 27, 2017 (R. 368-72), and the second was dated on or around June 1, 2017. (R. 373-76.) The ALJ accorded both opinions "little weight." (R. 28.) The Plaintiff argues that the ALJ, in doing so, violated the treating physician rule. (Pl. Mem. of Law, ECF No. 16-2, at 11.) The Commissioner, in response, asserts that the ALJ "provided good reasons for not giving significant weight to the opinions attributed to Dr. Ayora." (Def. Mem. of Law, ECF No. 19-1, at 12.)

The ALJ provided two specific reasons for rejecting the February 2017 opinion: (1) the assessed limitations did not align with the "conservative treatment" that the Plaintiff received; and (2) the opinion was dated one month after the Plaintiff's application for benefits and failed to reflect her "improved condition." (R. 28.) The ALJ rejected the June 2017 opinion in part because it was missing the signature page and, therefore, it was "not clear whether it reflect[ed] Dr. Ayora's expert opinion or the opinion of a clinician working under Dr. Ayora." (*Id.*) Finally, for both opinions, the ALJ generally concluded that they were inconsistent with other substantial evidence in the record. (*Id.*)

At a minimum, these reasons did not sufficiently address the first *Burgess* factor— the "frequen[cy], length, nature, and extent" of the treatment. *Connolly*, 2020 WL 772851, at *2. Dr. Ayora was the Plaintiff's treating psychiatrist, providing weekly care to the Plaintiff since January 2015. (R. 368.) Thus, her opinions were based on over two years of weekly observations,

providing a "longitudinal" perspective on the Plaintiff's mental health conditions. *Estrella*, 925 F.3d at 97. The ALJ failed to consider how this factored into his analysis.

To be sure, an ALJ's failure to apply the *Burgess* factors is not necessarily reversible error if "a searching review of the record" assures the Court "that the substance of the treating physician rule was not traversed." *Id.* at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). Another way of stating this principle is to say that a failure to consider the *Burgess* factors may be excused if "the record otherwise provides 'good reasons' for" the weight that the ALJ assigned to the treating physician's opinion. *Id.* (quoting *Halloran,* 362 F.3d at 32 n.2); *see also Stonick v. Saul*, No. 3:19-CV-01334 (TOF), 2020 WL 6129339, at *7 (D. Conn. Oct. 19, 2020) (although ALJ had not explicitly considered *Burgess* factors, the Court's "searching review" of the record revealed that the ALJ's weight assignment "was supported by 'good reasons'"). In this case, however, the Court is unable to conclude that the ALJ's reasons for giving Dr. Ayora's opinions "little weight" were "good reasons."

The ALJ's first reason for rejecting the February 2017 opinion was that the assessed limitations were inconsistent with the "conservative treatment" that the Plaintiff received. (R. 28.) Court have, however, generally not accepted a perceived inconsistency between a limitation and a conservative treatment plan as a "good reason" for discounting a treating physician's opinion. *Cf., e.g.*, *Burgess*, 537 F.3d at 129 ("[T]he opinion of the treating physician [is not] to be discounted merely because he has recommended a conservative treatment regimen."); *see also Foxman v. Barnhart*, 157 F. App'x 344, 347 (2d Cir. 2005) (summary order) ("[T]he ALJ erred in questioning the validity of [the treating physician's] opinion based on his 'conservative' course of treatment."); *Shaw,* 221 F.3d at 134-35 (finding that the ALJ's notion that the severity of an impairment "directly correlates with the intrusiveness of the medical treatment ordered" was not "the overwhelmingly

compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion").

The ALJ's second reason for rejecting the February 2017 opinion was that the opinion, which was dated one month after the Plaintiff filed her application, did not reflect the Plaintiff's "improved condition."  (R. 28.)  Yet the fact that the claimant's condition "improved" in some measure is not, on its own, a "good reason" for discounting her treating physician's opinion about her limitations.  *See, e.g., Wilson v. Colvin*, No. 15-CV-6316, 2016 WL 5462838, at *12 (W.D.N.Y. Sept. 28, 2016) ("The ALJ also noted that, at some points, the record suggests that plaintiff's condition improved.  Here, however, the fact that plaintiff showed some 'improvement' was not so compelling as to override the opinion of plaintiff's treating physicians.").  The ALJ's discussion fails to adequately explain how and why the Plaintiff's "improvements" warranted rejection of Dr. Ayora's opinion.  For example, the ALJ stated that "clinical observations show the claimant has normal attention and concentration and is fully-oriented," citing to the psychiatric evaluation from the Yale New Haven Emergency Department. (R. 28, 446.)  In doing so, he failed to address the context of the psychiatric evaluation—that is, that the evaluation was done during the Plaintiff's hospitalization for a "possible manic episode."  (R. 439.)  The ALJ did not explain why the examination done during the hospitalization was substantial evidence of improvement, but the hospitalization itself warranted no mention.

The ALJ also rejected the June 2017 opinion in part because it was missing its signature page.  The Court notes that, "[w]here the record contains a treating physician opinion, but the opinion is incomplete, unclear, or inconsistent, the ALJ's duty to develop the record requires the ALJ to seek additional information." *Moreau v. Berryhill*, No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *11 (D. Conn. Mar. 14, 2018).  Though the June 2017 opinion was unsigned, it was

authored by a clinician at CMHC.  Rather than conclude that the opinion was from a non-treating physician, the ALJ should have re-contacted Dr. Ayora and/or CMHC for clarification.  "If the ALJ was uncertain about the identity of the authors of the [medical source opinions], [he] should have taken steps to ascertain whether the questionnaires were authored by treating physicians and, if not, to obtain the treating physician's assessments of plaintiff's residual functional capacity." *Knox v. Astrue*, No. 10-CV-38 (SLT), 2012 WL 1117849, at *18 (E.D.N.Y. Mar. 30, 2012); *see also Moreau*, 2018 WL 1316197, at *13 (directing the ALJ on remand to recontact the medical treatment facility and identify the author of an unsigned opinion).

Finally, the ALJ concluded that both of Dr. Ayora's opinions were generally inconsistent with other substantial evidence in the case record.  The Court notes that it must be "mindful of the Second Circuit's admonition that 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'"  *Sadusky v. Saul*, No. 3:19-CV-736 (RMS), 2020 WL 2730834, at *10 (D. Conn. May 26, 2020) (quoting *Rosa*, 168 F.3d at 79).  Merely stating there are inconsistencies – as the ALJ did here – does not allow him to dismiss the treating physician's opinion entirely without first making reasonable attempts to gain clarification from the treating physician.  *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte.").  There is no indication in the record that the ALJ attempted to seek clarification from Dr. Ayora.  *Cf. Cummings v. Saul*, 2020 WL 5640532, at *4 (holding ALJ fulfilled his duty to develop the record when he twice requested the treating

physician clarify his opinion and received no response to the first request and a "lackluster" response to the second).

Accordingly, the Court concludes that the ALJ erred by according Dr. Ayora's opinions "little weight" without providing "good reasons" for doing so. *Guerra*, 778 F. App'x at 77. Encompassed within the ALJ's insufficient reasons is a failure to develop the record because he did not attempt to contact CMHC or Dr. Ayora, either to clarify the source of the June 2017 opinion or resolve inconsistencies between the record and Dr. Ayora's conclusions. *Schaal*, 134 F.3d at 505; *Busby*, 2017 WL 3575893, at *4. Remand is therefore warranted. *Guerra*, 778 F. App'x 77 ("To put it simply, a reviewing court should remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided 'good reasons for its weight assessment.'"); *Cummings v. Saul*, 2020 WL 5640532, at *6 ("[B]ecause the Court finds that the ALJ did not fulfill his obligation to develop the record, the analysis stops there.") (citing *Johnson*, 817 F.2d at 986).

### D.      The ALJ Did Not Discharge his Duty to Develop the Record by Relying on the Statements of the Plaintiff's Counsel

The Commissioner argues that the ALJ discharged his duty to develop the record by "attempt[ing] to develop the record further, with the assistance of plaintiff's counsel, as he is permitted to do.  Importantly, the ALJ may rely on the efforts of plaintiff's counsel to develop the record."  (Def. Mem. of Law, ECF No. 19-1, at 13.)  The Court disagrees.  While the ALJ may rely on counsel to obtain some records, "ALJs have a duty to develop the record even in cases where the claimant is represented by counsel and may not delegate her duty to develop the record to the claimant's attorney."  *Edwards v. Berryhill*, No. 3:17-CV-298 (JCH), 2018 WL 658833, at *12 (D. Conn. Jan. 31, 2018); *see also Sotososa v. Colvin*, No. 15-CV-854 (FPG), 2016 WL 6517788, at *4 (W.D.N.Y. Nov. 3, 2016) ("The Second Circuit has indicated that the ALJ may

rely on the claimant's counsel to obtain missing evidence under some circumstances, but it has stopped short of holding that the ALJ may delegate his or her duty to the claimant's counsel.  In *Jordan* and *Frye*, the Second Circuit determined that the ALJs satisfied their duty to develop the record because, even though the ALJs relied on counsel to obtain missing evidence, they also took independent steps to complete the record.") (citing *Jordan v. Comm'r of Soc. Sec.*, 142 Fed. App'x. 542, 543, 2005 WL 2176008, at *1 (2d Cir. Sept. 8, 2005) (summary order); *Frye ex rel. A.O. v. Astrue*, 485 Fed. App'x. 484, 488 n.2 (2d Cir. 2012) (summary order)); *Vincent v. Astrue*, No. 08-CV-0956 (VEB), 2010 WL 10827101, at *8 (N.D.N.Y. Mar. 30, 2010) ("The case law in this area is well-settled, remand is required whenever further development of the record is necessary, even where (as here) the underdevelopment of the record is attributable, in part, to inaction by the claimant's counsel.").

In this case, the ALJ attempted to simply delegate the duty to develop to the Plaintiff's counsel.  During the June 2018 hearing, the ALJ asked, "Other than these records are you aware of any evidence that has not been submitted?"  (R. 53.)  The Plaintiff's counsel responded "[n]o." (*Id.*)  When given the opportunity to submit additional records by fax, the Plaintiff "did not submit additional evidence from Dr. D'Cunha, Dr. Cleves-Bayon, or Dr. Jacobs.  Nor did plaintiff alert the ALJ that such evidence was missing.  Plaintiff did not submit evidence related to a September 2017 hospitalization and did not alert the ALJ about it."  (Def. Mem. of Law, ECF No. 19-1,  at 14.)  The Commissioner is essentially arguing that the Plaintiff's counsel held the responsibility for identifying the gaps in the record and drawing the ALJ's attention to them.  But the ALJ's duty to develop cannot be so easily discharged.  Indeed, when the record clearly lacks necessary information, the ALJ must seek out that information regardless of the statements of counsel. "Where, as here, it is apparent from the face of the record that the record lacks necessary

information, the ALJ cannot be relieved of his affirmative obligation to develop the record by a statement of counsel." *Hilsdorf v. Comm'r of Soc. Sec.,* 724 F. Supp. 2d 330, 346 (E.D.N.Y. 2010).

### E.    Remaining Arguments

Because the Court is remanding this matter for further development of the record, it does not reach the Plaintiff's remaining arguments. The Court declines to address the Plaintiff's remaining arguments because "upon remand and after a *de novo* hearing, [the ALJ] shall review this matter in its entirety." *Faussett v. Saul*, No. 3:18 CV 738 (MPS), 2020 WL 57537, at *5 (D. Conn. Jan. 6, 2020); *see also Delgado,* 2018 WL 1316198, at *19  (holding that because the case is "already being remanded for other reasons," and "because [the plaintiff's] RFC may change after full development of the record," the ALJ is likely to need to reconsider the other steps in the five-step analysis)); *Pacheco*, 2020 WL 113702, at *8 (holding that, on remand, the Commissioner must address the other claims of error not discussed in the ruling); *Moreau*, 2018 WL 1316197, at *4 ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

On remand, the ALJ should develop the record as necessary to obtain up-to-date treatment notes and opinions as to the Plaintiff's functional limitations from treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, or obtain a functional capacity evaluation and thoroughly explain his findings in accordance with the regulations. *See Martin v. Berryhill*, No. 16-CV-6184 (FPG), 2017 WL 1313837, at *4 (W.D.N.Y. Apr. 10, 2017) ("There were many avenues available to the ALJ to fill the gap in the record . . . .") (citing *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016)).  The Commissioner, on remand, "should employ whichever of these methods are appropriate to fully develop the record as to [the plaintiff's] RFC." *Id.*

IV.     <u>**CONCLUSION**</u>

If a decision is reversed because it contains legal error or is not supported by substantial evidence, the Court may "remand for a new hearing or remand for the limited purpose of calculating benefits." *Henningsen*, 111 F. Supp. 3d at 263 (internal quotation marks omitted). However, remand for calculation of benefits is not appropriate when the record requires further development. "In deciding whether a remand is the proper remedy, [the Second Circuit has] stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts*, 388 F.3d at 385. In this case, the Court has determined that the matter should be remanded to the Commissioner for further development of the record. Therefore, an order for the calculation of benefits is not appropriate.

For the reasons stated, the Plaintiff's motion to reverse with an order for an award and calculation of benefits is **DENIED**, but her alternative motion to reverse and remand for a new hearing is **GRANTED**. The Commissioner's motion to affirm is **DENIED**. The Commissioner's decision is **VACATED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this decision. In light of the Court's holdings, it need not reach the Plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to enter judgment in favor of the Plaintiff and close this case. The Clerk is further instructed that, if any

party appeals to this Court the decision made after this remand, any subsequent Social Security appeal is to be assigned to the undersigned.

It is so ordered.

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge